FILED
2021 Dec-17 PM 03:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

**STATE FARM LIFE INSURANCE COMPANY,**

**Plaintiff,**

**v.**

**BRADLEY H. BENHAM III and JOYCE H. BENHAM,**

**Defendants.**

Civil Action Number
**2:21-CV-00695-AKK**

# MEMORANDUM OPINION

This matter arises from an interpleader action initiated by State Farm Life Insurance Company over the proceeds of a $100,000 policy it issued in 1987 to Bradley H. Benham, Jr., the father of Bradley H. Benham III and the ex-husband of Joyce H. Benham.[1] *See* docs. 1; 1-1. The court has for consideration Joyce Benham's and Bradley Benham III's cross-motions for summary judgment, docs. 32; 38, in which they assert competing claims to the proceeds. In short, Joyce Benham contends that her divorce agreement with Bradley Benham, Jr., maintains her role as primary beneficiary of the policy and entitles her to the entirety of the proceeds. *See* doc. 32. On the other hand, Bradley Benham III argues that South

[1] The court refers to each Benham by his or her full name where an individual's identity is unclear.

Carolina law, as applied to the divorce agreement, revoked Joyce Benham's designation as beneficiary to the proceeds exceeding $50,000. *See* docs. 38; 42. Both motions are ripe for resolution. As explained below, Joyce Benham's motion is due to be granted, and Bradley Benham III's motion is due to be denied.[2]

**I.**

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. This rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant must first establish the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmovant to "go beyond the pleadings" and show a "genuine issue for trial," *see id*. at 324, that is, to "produce[] evidence such that a reasonable factfinder could return a verdict in its favor," *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell*

---

[2] Joyce Benham also filed a motion for judgment on the pleadings in which she asserts that Bradley Benham III missed the November 26, 2021, deadline to respond to her motion for summary judgment and that any subsequent filing was untimely. *See* doc. 34. However, given the Thanksgiving holiday and court closures, Bradley Benham III's response was due by November 29, a deadline he met. *See* doc. 36. The motion for judgment on the pleadings, doc. 34, is therefore due to be denied.

*v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The filing of cross-motions for summary judgment does not alter these standards. *See Price v. Dunn*, 385 F. Supp. 3d 1215, 1225 (S.D. Ala. 2019) (citing *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005)).

Generally, at summary judgment, the court must credit the nonmovant when conflicts arise between the facts evidenced by the parties, *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013), and construe the evidence and reasonable inferences arising from it in the light most favorable to the nonmovant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration." *Price*, 385 F. Supp. 3d at 1225 (quoting *Muzzy Prods., Corp. v. Sullivan Indus., Inc.*, 194 F. Supp. 2d 1360, 1378 (N.D. Ga. 2002)). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

## II.

In May 1987, State Farm issued Bradley Benham, Jr., a "Basic Plan" life insurance policy with a face value of $100,000. *See* doc. 32 at 3.[3] Bradley Benham,

[3] Because Bradley Benham III does not dispute the facts as set forth in Joyce Benham's motion for summary judgment, the court derives these facts from Joyce Benham's motion. *See* docs. 32; 36; 38.

Jr., named his then-wife, Joyce Benham, as the primary beneficiary and his then-newborn son, Bradley Benham III, as the successor beneficiary. *Id.*; doc. 1-1 at 14. The policy became effective on May 14, 1987. Doc. 1-1 at 3.

In December 2005, the elder Benhams divorced in Marion County, South Carolina. Docs. 32 at 4; 1-2 at 2. Their divorce agreement, incorporated into the family court's divorce decree, stipulated that "the [l]ife [i]nsurance policies [then] in effect" would "remain in effect," with Bradley Benham, Jr., "being responsible for all premiums" and Joyce Benham "being the beneficiary." Docs. 32 at 4; 1-2 at 3. The divorce agreement also provided that "[t]he insurance payable to [Joyce Benham] shall be in the amount of at least Fifty Thousand Dollars." Doc. 1-2 at 3. Bradley Benham, Jr., never altered the beneficiary designations before his death in Alabama in 2021. *See* doc. 32 at 4. After his death, State Farm filed this interpleader action, *see* doc. 1, and deposited the life insurance proceeds of $112,530.80 with the court, *see* Minute Entry on 09/01/2021; doc. 24.

**III.**

Joyce Benham asserts her entitlement to the entirety of the proceeds, arguing that South Carolina law controls the interpretation of the divorce agreement and that the state's revocation-upon-divorce statute does not preclude her receipt of the proceeds given the language of the divorce agreement. *See* doc. 32 at 6–7. For his part, Bradley Benham III agrees that South Carolina law governs but contends that

the law essentially severed Joyce Benham's interest in the proceeds that exceed $50,000 under the terms of the divorce agreement. *See* docs. 38 at 4–6; 42 at 3. The court addresses the law governing the action before turning to the divorce agreement.

A.

"Though a federal interpleader action is not treated in all respects as a typical diversity case, 'substantive state rules of decision generally govern federal interpleader proceedings.'" *Metro. Life Ins. Co. v. Tucker*, 846 F. App'x 798, 799–800 (11th Cir. 2021) (quoting *Perkins State Bank v. Connolly*, 632 F.2d 1306, 1311 (5th Cir. 1980)). And a federal district court sitting in diversity applies the choice-of-law rules of the forum state—in this case, Alabama. *See Trumpet Vine Invs., N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1115 (11th Cir. 1996) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)). "In determining which state's law applies in a contract dispute, Alabama follows the principle of *lex loci contractus*, applying the law of the state where the contract was formed." *St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 894 n.1 (11th Cir. 2009); *Cherokee Ins. Co., Inc. v. Sanches*, 975 So. 2d 287, 292 (Ala. 2007). Thus, in a contractual dispute,

> Alabama law . . . first look[s] to the contract to determine whether the parties have specified a particular sovereign's law to govern. Lacking such a contractual specification, [the court] . . . appl[ies] the law of the state where the contract was formed. That state's law then governs unless it is contrary to [Alabama's] fundamental public policy.

*Stovall v. Universal Constr. Co.*, 893 So. 2d 1090, 1102 (Ala. 2004) (internal citations omitted).

In this case, Bradley Benham, Jr., and Joyce Benham divorced and formed their divorce agreement in South Carolina. *See* docs. 32 at 5; 1-2 at 2–3. The divorce agreement does not specify a particular sovereign's law to govern. *See generally* doc. 1-2. Therefore, as the parties agree, South Carolina law applies to the interpretation of the divorce agreement unless South Carolina law "is contrary to [Alabama's] fundamental public policy." *See Stovall*, 983 So. 2d at 1102. *See also* docs. 32 at 6; 38 at 4.

On the revocation of property transfers following divorce, the relevant law is South Carolina Code § 62-2-507. *See generally* S.C. CODE ANN. § 62-2-507. Enacted in 1986 and as amended in 2013, § 62-2-507 reads, in pertinent part:

> (c) Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment, the divorce or annulment of a marriage:
>
> (1) revokes any revocable:
>
> (i) disposition or appointment of property or beneficiary designation made by a divorced individual to the divorced individual's former spouse in a governing instrument . . .

*Id.* § 62-2-507(c).[4] Alabama's revocation-upon-divorce statute uses nearly identical terms.[5] Accordingly, South Carolina law does not run afoul of Alabama's fundamental public policy, and South Carolina law therefore applies to this action. *See Stovall*, 983 So. 2d at 1102.

B.

The court turns now to the primary issue in dispute: whether § 62-2-507(c) revokes Joyce Benham's designation as beneficiary of the policy at issue despite the language in the Benhams' divorce agreement, which predated the amendment of § 62-2-507 to include life insurance beneficiary designations. Joyce Benham contends that (1) she and the elder Bradley Benham entered into "a contract relating

---

[4] In 2013, the South Carolina Legislature "expand[ed] [§ 62-2-507] to cover life insurance and retirement plan beneficiary designations . . . to the former spouse that the divorced individual established before the divorce or annulment." S.C. CODE ANN. § 62-2-507 reporter's comment. The amendment "effectuates a decedent's presumed intent: without a contrary indication by the decedent, a former spouse will not receive any probate or nonprobate transfer as a result of the decedent's death." *Id.*

[5] In relevant part, Alabama's revocation statute reads:

> (b) Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the martial [sic] estate made between the divorced individuals before or after the marriage, divorce, or annulment, the divorce or annulment of a marriage:
>
> > (1) revokes any revocable:
> >
> > > (a) disposition or appointment of property made by a divorced individual to his or her former spouse in a governing instrument . . .

ALA. CODE § 30-4-17.

to the division of the marital estate" that preserved her status as beneficiary, *see* S.C. CODE ANN. § 62-2-507(c); and (2) regardless, the divorce agreement and divorce predated the amendment of § 62-2-507(c), which does not apply retroactively, *see id.* § 62-2-507 reporter's comment. *See* doc. 32 at 7–8. Bradley Benham III argues that the amended § 62-2-507(c) (1) applies retroactively and (2) revoked Joyce Benham's interest in the proceeds above $50,000 because the divorce agreement does not "expressly" enumerate proceeds above that amount.[6] *See* docs. 38 at 4–6; 42 at 3–4.

1.

Under South Carolina law, "[t]he construction and enforcement of an unambiguous contract is a question of law for the court, and thus can be properly disposed of at summary judgment." *Southern Glass & Plastics Co. v. Kemper*, 732 S.E. 2d 205, 209 (S.C. Ct. App. 2012); *South Carolina Dep't of Nat. Res. v. Town of McClellanville*, 550 S.E. 2d 299, 302–03 (S.C. 2001).[7] Ambiguity results when the

[6] In his response to Joyce Benham's motion, Bradley Benham III asserts that the divorce agreement provision potentially governing the insurance policy is ambiguous, "requiring an inquiry and subsequent interpretation by the [c]ourt of the pertinent provisions of both the agreement and the [South Carolina] statute." Doc. 36 at 5. The court understands this response, in conjunction with Bradley Benham III's motion for summary judgment, to argue that he is entitled to summary judgment on the proceeds in excess of $50,000 because only the numerical phrase "at least Fifty Thousand Dollars" is expressly stated in the agreement; and, if the court is unpersuaded, that the agreement is ambiguous, Joyce Benham's motion must be denied, and the case must proceed to trial to determine the agreement's meaning.

[7] "It is a question of law for the court whether the language of a contract is ambiguous. Once the court decides the language is ambiguous, evidence may be admitted to show the intent of the parties. The determination of the parties' intent is then a question of fact. On the other hand, the

terms of the contract "are reasonably susceptible of more than one interpretation." *Town of McClellanville*, 550 S.E. 2d at 302. Moreover, "[a] contract is read as a whole document so that one may not, by pointing out a single sentence or clause, create an ambiguity." *S. Atl. Fin. Servs., Inc. v. Middleton*, 590 S.E. 2d 27, 29 (S.C. 2003) (internal quotation marks omitted).

2.

In relevant part, the one-page divorce agreement at issue provides:

> It is agreed that the Life Insurance policies currently in effect shall remain in effect with the Husband being responsible for all premiums and the Wife being the beneficiary. The insurance payable to the Wife shall be in the amount of at least Fifty Thousand Dollars.

Doc. 1-2 at 3. Joyce Benham asserts that this provision expressly and unambiguously preserves her designation as beneficiary to the entirety of the proceeds, meaning that even if the court applies South Carolina's revocation-upon-divorce statute retroactively to this agreement, the law does not revoke her status. *See* doc. 32 at 7, 9. Bradley Benham III disagrees, arguing that "an honest assessment by any party of the 'at least' language present in the most pertinent provision [of the divorce agreement], would . . . admit that it raises questions . . . . [and] renders the language of the subject paragraph ambiguous at best." *See* doc. 38 at 5.

---

construction of a clear and unambiguous [contract] is a question of law for the court." *Town of McClellanville*, 550 S.E. 2d at 302–03 (internal citations omitted).

The life insurance policy at issue became effective in May 1987, *see* doc. 1-1 at 3, and so it was in effect at the time of the elder Benhams' divorce in 2005, *see* doc. 1-2 at 2. Thus, the divorce agreement unambiguously refers to the life insurance policy issued by State Farm to Bradley Benham, Jr., because it was one of the "Life Insurance policies currently in effect" at the time of the divorce. *See* doc. 1-2 at 3. The agreement also expressly states that "the Wife," Joyce Benham, would continue to "be[] the beneficiary" following the divorce. *See id.* This language is not susceptible to multiple meanings; to the contrary, it unambiguously conveys that the elder Benhams' divorce would not alter Joyce Benham's status as beneficiary of the life insurance policies then in effect.

It is true that State Farm issued Bradley Benham, Jr., a policy for $100,000, and the divorce agreement does not identify that exact amount. *See* docs. 1-1 at 3; 1-2 at 3. But the agreement explicitly provides that Joyce Benham will receive "at least Fifty Thousand Dollars" in payable insurance. *See* doc. 1-2 at 3. Nothing in the express terms of the agreement cuts off Joyce Benham's entitlement to the proceeds at $50,000 as Bradley Benham III argues. Rather, the agreement acknowledges that she will receive *at least* $50,000, and upwards of $100,000 is indeed at least $50,000.

Therefore, with or without South Carolina's revocation-upon-divorce statute—and the court has serious doubts about the retroactivity of the amended

law[8]—Joyce Benham is entitled to the entirety of the life insurance proceeds as a matter of law. The divorce agreement unambiguously preserves her designation as beneficiary to the proceeds amounting to or exceeding $50,000; the elder Bradley Benham never altered this designation; and the South Carolina statute, to the extent it applies, clearly exempts from its scope those divorces in which "the express terms of . . . a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce or annulment" address the disposition of beneficiary designations. *See* doc. 1-2 at 3; S.C. CODE ANN. § 62-2-507(c). Joyce Benham is entitled to summary judgment, and Bradley Benham III's cross-motion is due to be denied.

**IV.**

To close, Joyce Benham's motion for summary judgment, doc. 32, is due to be granted, and Bradley Benham III's motion for summary judgment, doc. 38, is due to be denied. The court will enter a separate order effectuating this opinion.

---

[8] As Joyce Benham points out, doc. 32 at 11, South Carolina applies a "strong presumption" against the retroactive operation of a statute unless "there is a specific provision or clear legislative intent to the contrary," *see, e.g.*, *Boyd v. Boyd*, 289 S.E. 2d 153, 154 (S.C. 1982). Though the South Carolina Court of Appeals does not appear to have ruled on the issue, the Court of Common Pleas of South Carolina concluded that South Carolina's revocation-upon-divorce statute, as amended, does not apply retroactively to divorces entered before the effective date of the amendment. *See Meier v. Burnsed*, No. 2018-CP-07-00211, 2019 WL 10984319, at *1 (S.C. Com. Pl. Mar. 21, 2019). Indeed, reviewing the express terms of the statute, and considering the implications of retroactivity, the court agrees that the revocation-upon-divorce statute is best read as applying prospectively. The statute's terms do not state otherwise, and it would be illogical to apply a statute meant to "effectuate[] a decedent's presumed intent" to life insurance beneficiary designations in divorce agreements formed before the amendment of the statute to include them. *See* S.C. CODE ANN. § 62-2-507 reporter's comment.

**DONE** the 17th day of December, 2021.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE